IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GARY COOPER,** | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GJH-17-3440 |
| **FRANK BISHOP,** *NBCI***, and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND,** | * * | |
| Respondents. | * | |
| | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Petitioner Gary Cooper, an inmate currently housed at North Branch Correctional Institution, filed this habeas petition pursuant to 28 U.S.C. §2254, challenging the legality of his Maryland State conviction for second-degree assault on a Department of Corrections ("DOC") employee. ECF No. 1. Respondents seek dismissal of the petition. ECF No. 6.

The Court finds no need for a hearing in this matter. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

I.  **BACKGROUND**

   A. **Petitioner's Trial**

Cooper was tried in three jury trials in the Circuit Court for Washington County for second-degree assault of an employee of the DOC. The third trial is the subject of this habeas petition. At the first trial, held on November l, 2007, Cooper was found guilty and sentenced to 8 years of imprisonment consecutive to a sentence he was then serving. ECF No. 6-3 at 2. This conviction was reversed by the Maryland Court of Special Appeals on July 23, 2009, for reasons not relevant to the instant matter. *Cooper v. State,* Sept. Term 2007, No. 2199 (Md. Ct. Spec. App. July 23, 2009). The second trial, held on February 1, 2010, ended in a mistrial. ECF No. 6-3 at 2. The third trial was held on May 13, 2010. *Id.* Cooper was convicted and sentenced to 6 years of imprisonment consecutive to a sentence he was then serving. *Id.*

At the May 13, 2010 trial, Correctional Officer Shannon Singleton testified as to events that took place on May 2, 2007, at the Maryland Correctional Training Center "MCTC." ECF No. 6-2 at 55–56. Singleton stated she was conducting the stand-up formal count on the 4-B Tier where Cooper was housed. *Id.* at 56–57. Cooper would not stand up for the count, and she contacted her supervisor, Lieutenant Douglas Webb, for further instructions. *Id.* at 57. Singleton testified that Lieutenant Webb then went to speak with Cooper, but Singleton did not observe Webb approach the cell. *Id.* at 58–59. Singleton later saw Cooper wheeling a cart packed with his property to the end of the tier, as he was to be placed on segregation. *Id.* at 59, 63. She stated "they went to cuff him after they walk [sic] out, and he got a stance on Lieutenant Webb and then he …… Lieutenant Webb pulled his mace. When Webb pulled his mace, Cooper swung and hit Officer [Ty] Stepler in the face." *Id.* at 59 (ellipses in transcript). She didn't "believe" that

Webb had deployed the pepper spray before Cooper struck Officer Stepler. *Id.* at 60. Singleton saw Officer Stepler "off-balance" after he was hit. *Id.* at 61.

On cross examination by trial counsel, Singleton stated Cooper was maced twice, she was unsure if he was maced a third time, and Cooper then "complied" and was cuffed. *Id.* at 65–67. Singleton testified that she was not aware of a DOC directive or standard requiring an inmate to be handcuffed before being transported from general population to segregation. *Id.* at 64.

Lieutenant Webb testified at trial. *Id.* at 69. On May 2, 2007, he was called to Housing Unit 4 in response to inmates on B Tier refusing to stand for the formal stand-up count. *Id.* at 69–71. Webb spoke with inmate Cooper who stated he would not comply with the count. *Id.* at 72–73. Webb notified staff to bring a cart and informed Cooper to begin packing his property. *Id.* at 73. Webb then left the cell area and notified the Captain's Office that he was placing Cooper on Administrative Segregation Pending Hearing ("ASPH") and began filling out paperwork. *Id.* at 73–74. While Webb was completing paperwork, Officer Stepler arrived in the hallway with Cooper and his property. *Id.* at 74–75. Webb instructed Stepler to place Cooper in handcuffs and Cooper went into a "boxing like stance." *Id.* at 75. Webb drew his mace, Stepler stepped towards Cooper to attempt to apply the handcuffs, and Cooper "turned and struck" Stepler in the "facial area" with his fist. *Id.* at 75–76. Webb believes Cooper took a "couple of more wild swings" at Stepler but was not sure if they impacted Stepler. *Id.* at 81. Stepler "went to one knee, possibly to the floor." *Id.* Webb then pepper sprayed Cooper twice, after which he complied with orders to lay on the floor and was placed in handcuffs. *Id.* at 76, 79.

On direct examination, the assistant state's attorney showed Webb two pages of photographs with two photos on each page. *Id.* at 77. Webb identified the photographs showing Stepler, with "redness" to the left area of his face, consistent with Webb's recall of where Stepler

3

was struck by Cooper. *Id.* at 77–78. The photographs were admitted into evidence without objection from Cooper's trial counsel. *Id.* at 78.

On cross-examination by trial counsel, Webb testified that he is familiar with DOC directives and standards of conduct, and an inmate would be cuffed on transport from general population to administrative segregation. *Id.* at 83. He further stated that it was not procedure to apply handcuffs to Cooper before he was removed from his cell. *Id.* at 86–87. When Cooper came off the tier, he was not cuffed. *Id.* at 83.

Correctional Officer Ty Stepler testified that Lieutenant Webb asked him to help move Cooper from B Tier to administrative segregation on C Tier. *Id.* at 98. When Stepler arrived at Cooper's cell, Cooper was placing all of his property in a cart. *Id.* at 99. After Cooper finished packing, and he came off the Tier, Webb told Stepler to cuff Cooper and take him to C Tier. *Id.* at 99–100. Then, "Cooper turned faced Lieutenant Webb, raised his fists, said 'Make me.'" *Id.* at 100. Webb then pulled out his mace, and as soon as he did, Cooper turned around, punched Stepler in the face and "plowed through" Stepler to get away from Webb. *Id.* at 101. Stepler recalls he was stuck once "for sure" on the left side of his face, but he was not "really sure" if he was struck again. *Id.* Stepler reviewed the four photographs of himself previously admitted into evidence and stated they accurately reflect how he looked after the incident. *Id.* at 101–102. After he was struck he was "a little bit dazed." *Id.* at 102. According to Stepler's testimony, Webb maced Cooper three times and then cuffed while Cooper was on the floor. *Id.*

On cross examination by trial counsel, Stepler testified that he is familiar with the directives and regulations on correctional officer conduct while at work. *Id.* at 105. He said that when an inmate is placed "on segregation" he is supposed to be cuffed pending transport but not when "he's on population." *Id.*

For the defense, Cooper's trial counsel presented the testimony of Toby Payne, Cooper's cellmate on May 2, 2007. *Id.* at 113–114. Payne testified that Lieutenant Webb told Cooper to pack up because he was "going on lock-up." *Id.* at 115. Payne went to speak with Webb while Cooper packed up his belongings, and when he was finished, Payne encouraged Cooper to try to resolve the matter with Webb. *Id.* at 116. Payne then observed Cooper trying to speak to Webb. *Id.* at 116–17. Payne started to "go down the steps," and when he turned around he saw one of the officers grabbing Cooper and Webb "coming at him with the mace." *Id.* at 117. Payne was then told to lock in by Webb. *Id.* He did not see Cooper strike anybody. *Id.* Before he returned to his cell, Payne saw Webb "slam" Cooper to the floor and mace him while holding his hair. *Id.* at 118–119. On cross examination, Payne stated that he did not see the beginning of the commotion. *Id.* at 121.

Detective Sergeant Mark J. Forrest of the Maryland Department of Public Safety and Correctional Services Internal Investigative Unit testified for the defense. *Id.* at 126. Forrest did not witness the incident on May 2, 2007, but he conducted the investigation and provided a report after events took place. *Id.* at 126–127. Trial counsel questioned Forrest regarding DOC directives and standards of conduct and showed him what Forrest described as "excerpts from the Division of Correction directives." *Id.* at 128–129. At counsel's direction, Forrest read a provision that stated, "[i]nmates shall be handcuffed whenever they are out of their cells" and another provision that stated, "[t]hese restrictions shall apply to an inmate placed on administrative segregation pending adjustment action as well as to an inmate serving a disciplinary segregation sentence." *Id.* at 129. Trial counsel attempted to introduce the documents into evidence and the assistant state attorney objected on the grounds that a complete

5

packet of the documents was not provided. *Id.* at 130. The court upheld the objection, stating that the documents would not be introduced "without a more complete set." *Id.*

Cooper testified in his defense. *Id.* at 142. He stated that when Officer Singleton did the count, he stood on a chair. *Id.* at 143. He was not able to stand on the floor because his cellmate was using the bathroom and it would be too "close" for him to stand on the floor. *Id.* at 143–144. Webb came to his cell and told him he was going to lock-up and to pack his property. *Id.* at 144. Cooper then went to get a cart, packed up his property, and started moving the cart with his cellmate. *Id.* at 145. On the encouragement of his cellmate, he tried to speak to Webb to resolve the matter. *Id.* at 145–146. Webb directed that the cuffs be placed on Cooper, and then Webb pushed Cooper. *Id.* at 146. Webb then pushed Cooper a second time. *Id.* Cooper stated that he presented his open hands in front of him, close together, to submit to cuffing. *Id.* at 147. Webb next took out his mace, and Stepler grabbed Cooper from the back in a "bear hug." *Id.* at 147–148, 150. Cooper threw his hands up to break the bear hug, then stepped to the side. *Id.* at 150. Cooper testified that he never struck Stepler and that he did not know how Stepler got a red mark on his left cheek. *Id.* at 147, 151. Webb maced Cooper in the face, and then Cooper was taken to the ground and held down with a knee on his head and his arm bent back. *Id.* at 148–149. Webb grabbed one of Cooper's corn rows, maced him again, applied handcuffs, and maced him a third time. *Id.* at 149–150.

The jury returned a verdict of guilty to the charge of second-degree assault on a DOC employee. *Id.* at 179. The Court imposed a sentence of six years to be served consecutively to any sentences being served. *Id.* at 186.

6

**B. Direct Appeal**

On appeal to the Maryland Court of Special Appeals, Cooper presented one question for review: Whether the third trial was barred by autrefois acquit[1] because there was a signed verdict sheet submitted in the second jury trial? ECF No. 6-3 at 2.

The appellate court found that there was no final acquittal of the charge and Cooper was not placed twice in jeopardy by the retrial on May 13, 2010. *Id.* at 9. The conviction was affirmed. *Id.* Cooper filed a petition for writ of certiorari with the Maryland Court of Appeals that was denied without opinion. *See* ECF No. 6 at 6; *Cooper v. State*, 429 Md. 529 (2012).

**C. Post-Conviction**

On August 27, 2013, Cooper filed a post-conviction petition in the Circuit Court for Washington County. ECF No. 6-4. Below, claims 1–6 were raised by Cooper *pro se*, and claims 7–9 were raised by counsel in a supplemental petition filed on March 17, 2016:

1. Trial counsel rendered constitutionally ineffective assistance by failing to subpoena a medical expert;

2. Trial counsel rendered constitutionally ineffective assistance by failing to motion for a suppression hearing pertaining to a photograph of a DOC officer's injury;

3. Trial counsel rendered constitutionally ineffective assistance by way of counsel failing to motion for an in camera review of a DOC policy and procedure manual;

4. Prosecutor failed to motion for an in camera review of a DOC policy and procedure manual resulting in a *Brady* violation;

5. Prosecutor suppressed evidence by failing to complete an investigation of prison procedures and protocol;

6. Appellate counsel rendered constitutionally ineffective assistance by failing to raise the allegations Petitioner raised in his pro se Petition;

---

[1] Autrefois acquit is a common law plea in bar to a criminal action that insulates a verdict of acquittal by ensuring that it "can never afterward, in any form of proceeding, be set aside and a new trial granted . . . ." *State v. Taylor*, 371 Md. 617, 633 (2002). That plea is encompassed in the principle of double jeopardy. *See United States v. Wilson*, 420 U.S. 332, 340 (1975); *Parks v. State*, 287 Md. 11, 14 (1980).

7. Trial counsel rendered constitutionally ineffective assistance by failing to advise Petitioner in regard to a plea offer extended in this case;

8. Trial counsel rendered constitutionally ineffective assistance by failing to adequately investigate and present mitigating evidence for purposes of sentencing; and

9. Each error related to Trial Counsel's ineffective assistance alone, and the cumulative effect thereof, prejudiced Petitioner's right to a fair trial.

ECF No. 6-5 at 3.

On November 17, 2016, post-conviction relief was denied by the Circuit Court following a hearing on September 8, 2016. ECF No. 6-5 at 19. Cooper's application for leave to appeal the order denying post-conviction relief was denied on November 3, 2017, with the mandate issuing on December 4, 2017. ECF No. 6-7.

In this Petition, Cooper claims that his trial attorney was ineffective because counsel failed to move for in camera review of policies and procedures of the DOC and failed to move to suppress photographs of the victim's injuries. ECF No. 1-1 at 9–10. Cooper also asserts that the "officers" withheld from disclosure a DOC policy and procedure in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). ECF No. 1-1 at 10–11. Cooper filed a memorandum in support of his claims. *See* ECF No. 1-1.

Respondents state in their answer that Cooper's claims lack merit for the reasons presented by the post-conviction court. ECF No. 6 at 19–23 Additionally, they note that Cooper failed to present any additional evidence in his habeas petition to support his claims. *Id.*

II.   **STANDARD OF REVIEW**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The

standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also White v Woodall*, 572 U.S. 415, 419–20 (2014) ("A state prisoner must show state court ruling on claim presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." (quoting *Harrington*, 562 U.S. at 103)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under § 2254(d)(1)'s "unreasonable application" analysis, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of that decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an *incorrect* application of federal law." *Id*. at 785 (quoting *Williams*, 529 U.S. at 410) (emphasis in original).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."

9

*Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if 'reasonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006) (alteration in *Wood*). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). "This is especially so when the court resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*.

### III.   DISCUSSION

#### A.  Ineffective Assistance of Counsel

As noted, Cooper argues that his trial counsel rendered constitutionally ineffective representation by: (a) failing to move for in camera review of policies and procedures of the DOC; and (b) failing to move to suppress photographs of the victim's injuries. ECF No. 1; ECF No. 1-1 at 9–10.

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984); *see also Buck v. Davis,* 137 S. Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged

10

test set forth in *Strickland*, 466 U.S. at 687. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *see also Buck*, 137 S. Ct. at 775. First, the petitioner must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Second, the petitioner must show that he was prejudiced by the deficient performance. *Id.*

When a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel, the standard for § 2254 relief and the *Strickland* standard are "dual and overlapping," and the two standards are applied "simultaneously rather than sequentially." *Lee v. Clarke*, 781 F.3d 114, 123 (4th Cir. 2015) (quoting *Richardson v. Branker,* 668 F.3d 128, 139 (4th Cir. 2012)). "Because both standards of review are 'highly deferential to the state court's adjudication . . . , when the two apply in tandem, the review is doubly so.'" *Id.* (quoting *Richardson v. Branker,* 668 F.3d at 139) (alteration in *Lee*). "When [28 U.S.C.] § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88. The Supreme Court has observed that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). The standard for assessing such competence is "highly deferential" and has a

"strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to habeas relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive, as failure to satisfy either prong is fatal to a petitioner's claim. *Strickland*, 466 U.S. at 697; *see also Jones v. Clarke*, 783 F.3d 987, 991–92 (4th Cir. 2015).

### 1. In Camera Review of DOC Policies and Procedures

Cooper claims his trial counsel was ineffective because he failed to move for in camera review of DOC policies and procedures. He states that when Webb testified at trial he held the policy pertaining to "segregation handcuff procedures and mandatory 10-13 alert code" for alleged inmate assaults on officers against his chest. ECF No. 1-1 at 1. Cooper avers that he was prevented from obtaining a copy of the documents because they were deemed confidential and they should have been reviewed in camera. *Id.* His argument appears to be that this failure prevented him from using the documents to impeach the state's witnesses. *Id.* at 1–2.

The post-conviction court applied the *Strickland* standard to the evidence and succinctly rejected this claim observing that contrary to Cooper's argument, "Petitioner has offered no evidence regarding this allegation at the hearing. Further, nothing in the record indicates a DOC officer testified about DOC policy and procedure while holding a DOC manual." ECF No. 6-5 at 7.

The trial record indeed does not indicate that Webb had DOC policies available to him while he was testifying. The trial transcript shows only that on cross-examination by trial counsel, Webb testified about his familiarity with DOC directives and standards of conduct and his understanding that an inmate would be cuffed on transport from general population to administrative segregation. ECF No. 6-2 at 83.

The transcript shows that Cooper's trial counsel questioned a different witness, Detective Sergeant Mark J. Forrest, regarding DOC directives and standards of conduct and showed Forrest "excerpts from the Division of Corrections directives." *Id.* at 129. Counsel pointed to provisions on the document that Forrest read aloud before the jury as follows: "[i]nmates shall be handcuffed whenever they are out of their cells" and "[t]hese restrictions shall apply to an inmate

placed on administrative segregation pending adjustment action as well as to an inmate serving a disciplinary sanction." *Id.* Trial counsel attempted to introduce the referenced document into evidence, but the state's attorney objected because a complete packet of the document was not provided. *Id.* at 130. The objection was upheld, the court ruling that the document would not be introduced "without a more complete set of it." *Id.*

Cooper has failed to establish that he was prejudiced by the absence of an in camera review of policies and procedures of the DOC, a critical element of an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697. Importantly, he does not assert how the introduction of this material would have altered the outcome of trial. Multiple witnesses testified as to their understanding of DOC policy and procedure, and one witness read from the policy in question. Additionally, multiple correctional officers involved in the incident testified as to the charge itself, namely, that they saw Cooper hit Stemple in the face. The state court made credibility determinations based on the evidence presented. Matters of credibility are properly determined by the trial court. *See Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) citing § 2254(e)(1) (protecting state courts' factual judgments unless disproved in federal court by "clear and convincing evidence"); *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("Section 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

Cooper fails to demonstrate that the lack of in camera review of a directive or policy prejudiced him. Moreover, Cooper has not shown the post-conviction court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts

14

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). There is no cause to warrant federal habeas relief.

### 2. Suppression of Photographs

Cooper also claims that his trial counsel rendered ineffective assistance for failing to move to suppress photographs of the victim's injuries, arguing that "no evidence linked [him] to the crime besides inconsistent testimony by officers and 1 (one) digital photograph that was not a true and actual depiction of [the] crime." ECF No. 1-1 at 2; *see also* ECF No. 6-5 at 6 ("Petitioner claims Trial Counsel's failure to suppress the photograph 'was prejudicial because no other facts on the record could have convicted defendant of the crime.'").

The post-conviction court summarized the testimony at trial relevant to this claim as follows: "State witnesses testified that Petitioner refused direction from a correctional officer, which resulted in an argument and eventual physical altercation between Petitioner and a correctional officer." ECF No. 6-5 at 2. The court rejected Cooper's claim finding:

> Bald allegations unsupported by evidence are inadequate to grant post conviction relief. *Duff v. Warden*, 234 Md. 646 (1964). Petitioner did not present any evidence regarding this allegation at the hearing. Petitioner's assertion that aside from the photograph depicting the DOC officer's injury, there was no other evidence the jury could have relied on to convict him is incorrect. Correctional officers who were involved in the incident testified. Petitioner has not demonstrated he was prejudiced by Trial Counsel's failure to suppress a photograph of the injury sustained by the DOC employee. Therefore, this Court cannot grant relief on this claim.

ECF No. 6-5 at 6–7.

The trial record clearly supports the finding of the post-conviction court. Multiple correctional officers present during the incident testified that Cooper hit Stepler. Webb testified that the photographs showing Stepler, with "redness" to the left area of his face, were consistent with where Webb recalled Stepler was struck. *Id.* at 77–78. Stepler testified that his review of the

15

four photographs show that they accurately reflect how he looked after the incident. *Id.* at 101–102. Cooper presents no facts to support his argument that the photographs should have been suppressed or that there was any resulting prejudice to Cooper.

Failure of trial counsel to make a motion that has no basis in fact or law does not constitute a viable basis for an ineffective assistance of counsel claim. Under *Strickland* there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Oken v. Corcoran*, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel was not constitutionally ineffective in failing to object . . . because it would have been futile for counsel to have done so[.]").

The post-conviction court determined that testimony established that the assault took place, and Cooper did not demonstrate that he was prejudiced by counsel's failure to suppress photographs of the injury. The post-conviction court correctly applied *Strickland*, and Cooper does not satisfy the high bar for award of § 2254 relief. Thus, this issue presents no basis for relief.

### B. *Brady* Claim

Cooper asserts that the "officers" withheld from disclosure a DOC policy and procedure and failed to provide it to both the prosecutor and defense counsel in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). ECF No. 1; ECF No. 1-1 at 3. Here, Cooper appears to assert that both Webb and Forrest had the DOC policy and procedures packet in hand while testifying. *Id.* As noted above, the record does not substantiate that Webb had the packet in hand while testifying.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Brady*, 373

U.S. at 87. Suppression of evidence by officers also violates the Constitution. *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964). "It makes no [constitutional] difference if the withholding is by officials other than the prosecutor." *Id.*; *see also Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014).

"The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985). In order to prevail on a *Brady* claim, it must be established that the evidence at issue is both favorable to the defense and that the unavailability of the evidence calls into question the result of the trial. *Id.* at 682. The Supreme Court has made clear that there is no distinction between exculpatory evidence and impeachment evidence in the context of a *Brady* analysis. *Id.* at 676 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). The guilty finding must be overturned only if the suppression of the impeachment evidence so limited the defense's ability to cross-examine an accusing witness that "its suppression undermines confidence in the outcome of the trial." *Id.* at 678.

The post-conviction court analyzed this claim in tandem with Cooper's claim that the State suppressed evidence by failing to complete an adequate investigation and found:

> There is no evidence before this Court to indicate that the State withheld or suppressed evidence. Further, there was no testimony or evidence offered to the Court to show that the evidence allegedly suppressed was exculpatory, or provided a basis for mitigation of evidence, provided grounds for the impeachment of a witness or that was material. In the absence of specific evidence in support of this allegation, the Petitioner's claim is little more than bald assertion, which does not constitute a ground for post conviction relief. *Austin v. Patuxent Institution*, 237 Md. 314 (1964).

ECF No. 6-5 at 18.

The post-conviction court's decision is neither contrary to nor an unreasonable

application of *Brady*, and the post-conviction court's findings of facts are supported by the record. The decision of the post-conviction court denying Cooper's *Brady* claim will not be disturbed.

### IV.  CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. 2253(c)(2); *see Buck v. Davis*, 137 S. Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Cooper may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

### V.  CONCLUSION

A separate Order denying and dismissing the Petition and declining to issue a certificate of appealability follows.

Dated: February 9, 2021                                   /s/_____
                                                           GEORGE J. HAZEL
                                                           United States District Judge